WALTON v. TRACY LOAN & TRUST CO. et al.
(CROOKSTON et al., Interveners).

No. 6118.   Decided July 12, 1939.   (92 P. 2d 724.)

250

*E. A. Walton,* of Salt Lake City, for appellants.

*Riter & Cowan, Fisher Harris,* City Atty., and *E. R. Christensen* and *Gerald Irvine,* Asst. City Attys., all of Salt Lake City, for respondents.

LARSON, Justice.

This is an appeal from the District Court of Salt Lake County. The action questions the power of the Board of Adjustment of Salt Lake City to authorize a non-conforming use in contravention of the provisions of the zoning ordinances of Salt Lake City.

Pursuant to Laws of Utah 1925, Article 3, Title 15, Chapter 8, Revised Statutes 1933, 15-8-89 et seq., the Board of Commissioners of Salt Lake City passed an ordinance and adopted a map, zoning Salt Lake City into seven zones, commencing with the most restricted they are as follows:

Residential A, Residential B, Residential B—2, Residential C, Commercial, Industrial, and Unrestricted.

Gasoline service stations are prohibited in Districts A, B and B—2. They are permitted in C District with a provision as follows:

Public garages and gasoline service stations shall not be permitted within 100 feet of any dwelling or apartment house.

The property involved in this action, owned by the Tracy Loan and Trust Company, hereinafter called the Tracy Company, is situated at the northeast corner of the intersection of Second South and Seventh East Streets in Salt Lake City, being a part of Block 46. By the provisions of the zoning ordinance all of Block 54 and practically the whole of the eight surrounding or contiguous blocks, together with the territory several blocks to the north, east, and southeast, are in Residential B—2 District where gasoline service stations are prohibited except such as existed at the time of the passage of the zoning ordinance. After the enactment of the zoning ordinance the city, pursuant to the provisions of Section 7 of Chapter 119, Laws of Utah 1925 (now Sec-

tions 15-8-95 to 15-8-103, inclusive, Revised Statutes of Utah 1933), provided for the appointment of a Board of Adjustment of five members, who with the Tracy Company are defendants and respondents herein. The defendant, Tracy Company, made application to the City Building Inspector (the administrative officer under the act) for a permit to erect and maintain a gasoline service station on the southwest corner of Block 54, above mentioned. The inspector refused to issue a permit on the ground that it was a prohibited use, the property being in Residential B—2 District. The Tracy Company appealed to the Board of Adjustment, hereinafter called the Board, for a variance from the terms of the ordinance, permitting the erection of a gasoline service station, a prohibited use. Plaintiff Walton protested the application. The Board granted the variance and directed the inspector to issue the permit. Walton then commenced this action in the District Court against the Tracy Company, the Board and the City to annul the order of the Board and restrain the erection of the service station. Four other owners of property in the neighborhood intervened, supporting plaintiff's position. The court decided in favor of the defendants. Plaintiff and the interveners appeal. The primary question presented is: Does the Board have power and authority to grant a variance for a nonconforming use, that is, to authorize the erection and maintenance of a building for a use prohibited within such district by the zoning ordinance?

The municipality is a creation, a creature of the legislature. It has only such powers as are granted to it by the state and such as are necessary or reasonably implied to enable it to perform the duties and functions and exercise the privileges conferred upon it. *Salt Lake City* v. *Sutter*, 61 Utah 533, 216 P. 234; *Wadsworth* v. *Santaquin*, 83 Utah 321, 28 P. 2d 161; *Utah Rapid Transit* v. *Ogden*, 89 Utah 546, 58 P. 2d 1. The power to restrict and regulate the size and use of buildings, structures and land for trade, industry, residence and other purposes, is granted to

the *legislative body* of cities for the purpose of promoting the health, safety, morals and general welfare of the community by the provisions of Article 3 of Title 15, Revised Statutes of Utah 1933, Section 15-8-89. The next section provides that for the aforesaid purposes the *legislative body* may divide the City into districts, and *"it* [the legislative body] may regulate and restrict the erection, construction * * * or use of buildings * * * or the use of land. All such regulations shall be uniform * * * throughout each district, but the regulations in one district may differ from those in other districts." The next section (15-8-91) declares that such regulations shall be made in accordance with a comprehensive plan and shall be made with reasonable consideration to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and the most appropriate use of land. Section 15-8-92 says that the *legislative body* shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended or changed. The following section or changes and amendments provides that in the event of specified opposition to a proposed change, "such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the *legislative body*." (italics added), a definite declaration that changes in regulations, restrictions and boundaries of a district must be made by the *Legislative body* of the city. Section 15-6-5, Revised Statutes of Utah 1933, declares that the City Commission, City Council or Town Board, in their respective communities shall be the legislative and governing body of such city or town. Independent of the statutory provisions referred to above, no one would doubt that the exercise of the zoning power is definitely a legislative function and activity.

The city zoning ordinance provides in Section 3 :

"That in order to designate districts *and regulate the location* of dwellings, business, trades and industries and the location of buildings

erected or altered for specified uses, Salt Lake City is hereby divided into seven use districts, (enumerating them). * * *

"Except as hereinafter provided, no building shall be erected or altered, nor shall any building or premises be used for any purpose other than is permitted in the use district in which such building or premises is located." (Italics added.)

Section 5 of the ordinance provides:

"In Residential B and B—2 districts no building or premises shall be used, and no building shall be erected which is arranged, intended, or designed to be used for other than one of the following uses:"

Then follows certain enumerations of permitted uses which do not include gasoline service stations. The only provisions in the ordinance with respect to nonconforming uses are in Section 14, providing that within any use districts a nonconforming use existing at the time of the passage of the ordinance may be continued only as long as such use is continuous; that any nonconforming use may be changed to a more restricted use or to a conforming use; and that no building or premises, after the adoption of the ordinance in a conforming use, can be changed into or back to a nonconforming use.

The ordinance also contains rather detailed provisions relating not to the uses to which premises or buildings can be put but to the erection and construction of buildings within the permitted uses, such as the kind, size, height, and area of buildings that may be erected; the percentage of lot that can be covered; distance of building from property lines, fence and yard regulations within the respective use districts.

The statute (Section 15-8-95, Revised Statutes of Utah 1933) provides for the appointment of a Board of Adjustment, which sits as an appeal body to review the decisions of the City Building Inspector. Section 15-8-102 provides that the Board may reverse or affirm, or may modify the order, requirement, decision or determination appealed from, and make such order as

ought to be made "and to that end shall have all the powers of the officer from whom the appeal is taken." The only other reference to the powers of the Board is Section 15-8-101, entitled "Powers of Board" and as far as material here reads: "(3) *To authorize* upon appeal *such variance* from the terms of the ordinance *as will not be contrary to the public interest,* where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship; *provided, that the spirit of the ordinance shall be observed* and substantial justice done." (Italics added.)

Putting these two sections together, it seems that the powers of the Board are the same as the powers of the Inspector and that in passing on appeals the Board may do only that which the Inspector may have done in the first instance. Can the Board then grant a variance in use or is it confined in its powers to variances in building and construction details within the specified uses? If the Board can grant a nonconforming use, that is, can authorize a prohibited use on one plot of ground within a district, it can as to all other plots of ground. Any variance in use is to the extent of such land in effect a rezoning or the placing of such land in a different zone than that in which the Commission by ordinance had placed it for the purpose of promoting the health, safety, morals and general welfare of the community. Such interpretation would permit the Board, an administrative agent merely, to set aside and in effect annul an ordinance, a legislative act of the Commission, and to do all the Commission itself might do. It requires no citation of authority to establish that the Commission could not delegate to the Board or any other administrative officer its legislative powers or functions. The Board may make such rules and regulations as are reasonably necessary or expedient to enable it to carry out administratively its functions and duties but not the duties and powers of the Commission. Its function is to carry out the will of the Commission and not to void or set aside that judgment or will. The conditions fixed

by statute (Section 15-8-101) under which the Board may grant a variance are: (a) It must not be contrary to the public interest, that is, to the established and declared purpose, policy and plan of the City; (b) there must be special conditions, that is, conditions not applying or that would not apply to other lands in the vicinity; (c) due to said special conditions a literal, that is, rigid or strict enforcement of the provisions of the building ordinances, must result in unnecessary hardship, that is to say, the detailed provisions of the building ordinance may be waived to allow reasonable utilization of buildings and land; (d) but even with all the foregoing conditions present the spirit of the ordinance must be observed, that is, no variance may be granted which is not in harmony with the purpose, object, policy, intent and plan of the City as manifested in the zoning and building ordinances. It is thus evident that the powers and functions of the Board are quite different from those of the City Commission. The latter is given the power in a broad and general grant, and without any right of review, of zoning the City as to uses to which land within the City can be put and to regulate and restrict the erection, construction, repair, etc., and use of buildings. The Board is merely given the right to hear appeals from the city building inspector, and so that it might review his rulings is granted the same powers granted to him. It may grant a variance or departure from the strict word of the building ordinance where a literal or strictly rigid enforcement of the words of the ordinance results in hardship where the imposition of such hardship is unnecessary to maintain the purpose, plan and spirit and object of the ordinance. Any action of the Board, the same as any action by the Inspector before the Board was established, is subject to review by a plenary action in court, by the city or by any person aggrieved. If therefore the court can review or modify the use restrictions of the zoning ordinance by action brought against the Board but cannot in any way review or modify the action of the City Commission in zoning and establishing those use limitations,

you have a legal hiatus whereby one can have a court review of the wisdom of legislative action indirectly, which cannot be had directly. If however the powers of the Board are limited to minor and practical difficulties, to such variations in detail and construction as the Inspector himself might have allowed, rather than to changes in use, the statute and set up are harmonious throughout, the hiatus is gone, and the purpose and spirit of zoning laws preserved so the City might develop according to a comprehensive plan and land be utilized to the best advantage consistent with the public policy and welfare. And this interpretation of the statute is in accordance with the great weight of authority. We note just a few of them. In *Van Meter* v. *H. F. Wilcox Oil & Gas Co.*, 170 Okl. 604, 41 P. 2d 904, 909, in holding the power of the Board of Adjustment to be limited to adjusting practical difficulties and unusual emergencies, the court said:

"It cannot, under the guise of exceptions and variances, modify, amend, repeal, or nullify the ordinance by establishing new zone lines and creating different areas for the drilling of oil and gas wells."

And in *State ex rel. Nigro* v. *Kansas City*, 325 Mo. 95, 27 S. W. 2d 1030, 1032, an action under a statute and ordinance substantially like those here involved, the Missouri Court put the answer in this language:

"It is to be first noted that the zoning ordinance must be read and construed in connection with the Enabling Act; the former, if in any respect inconsistent with the latter, is to that extent a nullity. The board of zoning appeals is intrusted with the duty of enforcing the provisions of the ordinance; it is an administrative body, without a vestige of legislative power. It cannot therefore modify, amend, or repeal what the ordinance itself designates as its 'general rules and regulations'; the power to do that is conferred upon the common council of Kansas City, and it can delegate no part of that power. The ordinance does not purport to authorize the board of zoning appeals to modify, amend, or repeal any of its provisions; but it does permit and direct the board to modify or partially suspend a rule in its application to a particular case where strict enforcement would 'by reason of exceptional circumstances or surroundings constitute a practical difficulty or unnecessary hardship.' This provision must be read in

connection with section 7 of the Enabling Act, which provides that the board of adjustment shall have the power, 'where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.' In other words, if in a specific case the enforcement of a regulation according to its strict letter would cause unnecessary hardship and the board can by varying or modifying the application of the regulation obviate the hardship and at the same time fully effectuate the spirit and purpose of the ordinance, they are authorized to so vary or modify the application. But the board can in no case relieve from a substantial compliance with the ordinance; their administrative discretion is limited to the narrow compass of the statute; they cannot merely pick and choose as to the individuals of whom they will or will not require a strict compliance with the ordinance."

In *Livingston* v. *Peterson,* 59 N. D. 104, 228 N. W. 816, 818, the court said:

"To permit the board of adjustment to authorize the erection of a building. specifically forbidden would be authorizing the board to amend, repeal, or suspend a provision of the ordinance, thus conferring upon it legislative power. It would be giving to the board the arbitrary power of determining whether certain specific provisions should be enforced, thus permitting discrimination. It would permit the board in its discretion to annul and vary the ordinance itself, instead of confining it to the application of regulatory provisions. * * *

"The ordinance must determine this matter, and not the board. For this reason it is clear that, where the board is given power to vary regulations, so as to apply them in harmony with the general purpose and intent of the ordinance and the law, it merely refers to regulations such as the distance which a church or school may be built from the rear of the lot, whether living, sleeping, or working rooms may be ventilated by an approved mechanical system, rather than by windows, whether churches or hospitals may exceed height restrictions of the district, and other provisions found in sections 9 and 10 of the ordinance. It cannot be extended to permit the building inspector or the board of adjustment to amend the ordinance, so as to authorize the erection of a building which is forbidden by the ordinance."

The Oklahoma Court has construed a statute identical with ours as to the sections here involved and held that

neither the Board of Adjustment nor the court had power to permit a prohibited use, such power being legislative and vested only in the legislative body of the city. *Beveridge* v. *Harper, etc., Trust,* 168 Okl. 609, 35 P. 2d 435; *In re Dawson et al.,* 136 Okl. 113, 277 P. 226; *Anderson-Kerr Inc.* v. *Van Meter,* 162 Okl. 176, 19 P. 2d 1068.

In *Zimmerman* v. *O'Meara,* 215 Iowa 1140, 245 N. W. 715, 718, the Iowa Court construing a similar statute answered the question from another angle, saying:

"While it is true that section 145 authorizes the board of adjustment to allow variances from the terms of the ordinance in specific cases, yet such variance must be within the spirit of the ordinance. * * * There is nothing in the record to indicate that an unnecessary hardship will be imposed upon appellee if she cannot thus reconstruct her house. If the addition is retained as restricted, the appellee's property accordingly will be worth more. She does not stand in an exceptional position. The argument offered to support the desirability of reconstructing the appellee's house into a duplex will apply equally to any other house in the addition. No exceptional or peculiar circumstances appear which place appellee's property in a different position from the other properties in the addition. Whatever hardship the restriction imposes upon appellee is likewise inflicted upon the other property owners. In other words, the appellee is restricted in the use of her property by the zoning ordinance, as the other property owners in the district are curtailed by that municipal regulation in the use of their property. Nevertheless the very restriction imposed by the zoning ordinance is a benefit to appellee and the other property owners."

Cases considering similar zoning provision exceptions condemn any attempt to do other than permit a slight use extension, or permit slight modifications in height or area restrictions within permitted uses, and even these must be in harmony with the spirit and purpose of the zoning ordinance. *In re Mark Block Holding Corp. et al.,* 141 Misc. 818, 253 N. Y. S. 321; *Livingston* v. *Peterson,* 59 N. D. 104, 228 N. W. 816; *Prusik* v. *Board of Appeal,* 262 Mass. 451, 160 N. E. 312. It has been held that an ordinance authorizing the Board of Adjustment to permit nonconforming uses was itself unconstitutional as a delegation of legislative

power. *Welton* v. *Hamilton,* 344 Ill. 82, 176 N. E. 333. See also *Appeal of Perrin,* 305 Pa. 42, 156 A. 305, 79 A. L. R. 912. This court in *Provo City* v. *Claudin,* 91 Utah 60, 63 P. 2d 570, 574, clearly indicated the construction we have here given the statute when we said:

> "Its functions are limited to making adjustments under the ordinances in order that they will not be as the law of the Medes and Persians. Its powers are what they purport to be—limited to relief of cases where owners would suffer special hardships by the ordinance, and to make the ordinance pliable enough so as not to militate against the public welfare."

Further citation will be found in Decennial Digests under Municipal Corporations, Key No. 621.

It is interesting to note that the ordinance of Salt Lake City which provides for appointment of the Zoning Commission and the Board of Adjustment provides that the Board of City Commissioners must make the changes in zone boundaries or changes in the rules and restrictions with respect to zoning or buildings or use of land. Such changes must be made by petition to the Board of City Commissioners and in case of protest therein provided, the ordinance making such changes must have the favorable vote of at least four of the five members of the City Commission. Section 1558, R. O. Salt Lake City 1934.

We hold therefore that the Board of Adjustment has no power to permit or authorize the use of property for, or the erection or construction of a building designed to be used for, any purpose or use not permitted within such district by the terms of the Zoning Ordinance of Salt Lake City; and the order of the Board of Adjustment and the judgment of the District Court are both made without authority of law.

We are indebted to counsel for very exhaustive and able briefs on all phases of the various questions raised in this action. Since we hold that neither the Board of Adjustment nor the District Court has power to permit a nonconforming

use, it is unnecessary to pass upon the other questions raised. The judgment is reversed and the cause remanded to the District Court with directions to enter judgment for plaintiff as prayed for. Appellant to recover costs against Tracy Loan & Trust Co.

.MOFFAT, C. J., and WOLFE, McDONOUGH, and PRATT, JJ., concur.