**Jack F. SCHERBEL, Plaintiff and Appellant,**

v.

**SALT LAKE CITY CORPORATION, Defendant and Respondent.**

No. 19633.

Supreme Court of Utah.

May 3, 1988.

Rehearing Denied May 25, 1988.

Leon A. Halgren, Salt Lake City, for plaintiff and appellant.

Roger Cutler, Judy F. Lever, Bruce Baird, Salt Lake City, for defendant and respondent.

DURHAM, Justice:

Appellant Jack F. Scherbel appeals the district court's dismissal of his complaint challenging the Salt Lake City Council's decision to deny zoning approval of his application to construct a condominium complex. Appellant argues that the City Council did not have authority to render its decision, that he had vested rights to a building permit under the zoning ordinance that existed at the time of his original application, and that the community group opposing his application before the City Council did not have standing to pursue the challenge. The district court denied appellant's complaint for extraordinary relief after a trial on the merits. We affirm the trial court's action, but disagree in part with its analysis.

Appellant owns, or has an option to buy, four parcels of property at the southeast corner of Second Avenue and "E" Street in "the Avenues," a historical district of Salt Lake City. He proposed a number of building projects for that property over several years, and on October 24, 1979, he began the process of obtaining a building permit for a 35–unit condominium project.

Pursuant to Revised Ordinances of Salt Lake City, Utah §§ 51–32–1 to –14 (1965), an applicant seeking to obtain a building permit in a historic district, such as the Avenues, must submit a preliminary application of the design to the Historical Landmark Committee (HLC). The HLC examines the conceptual design and makes an advisory recommendation to the Salt Lake City Planning Commission based on the proposed project's compatibility with the historic nature of the district. The Planning Commission then grants or denies conceptual approval[1] of the plans. If concep-

---

1. The conceptual design is a less-detailed version of the building plans. The HLC design

tual approval is granted, the applicant typically prepares detailed plans which are reviewed by city officials for compliance with zoning requirements and the building code before a building permit is issued. If conceptual approval is denied, Revised Ordinances of Salt Lake City, Utah § 51–32–11 authorizes an appeal to the Board of City Commissioners within thirty days of the Planning Commission's decision.

In May of 1979, before appellant's preliminary application to the HLC, the structure of Salt Lake City's government was changed. Prior to 1979, Salt Lake City was governed by a board of commissioners headed by the mayor. However, with the passage in 1977 of the Optional Forms of Municipal Government Act, Utah Code Ann. §§ 10–3–1201 to –1228 (1986), municipalities acquired the option of adopting either a council-mayor or a council-manager form of government. The voters of Salt Lake City adopted the council-mayor form. The new form of government provides for a separation of executive and legislative functions, see Utah Code Ann. § 10–3–1209 (1986), both of which were previously combined in the Board of City Commissioners. The new form of government went into effect in January of 1980, after appellant's preliminary application to the HLC, but before his appeal from the Planning Commission's later decision was taken.

The HLC in this instance recommended that the Planning Commission deny appellant's application for the 35–unit complex. Nonetheless, appellant sought the Planning Commission's approval of the project by submitting a revised plan for a 32–unit complex. The revised plan was submitted directly to the Planning Commission even though the HLC had not been given the opportunity to review it.[2] The Planning Commission approved the revised plan. A Utah corporation made up of Avenue residents, the Greater Avenues Citizens Council (GACC), requested reversal of the Planning Commission's decision in a letter to the mayor of Salt Lake City.

Under Revised Ordinances of Salt Lake City, Utah § 52–32–11, GACC's appeal of the Planning Commission's decision should have gone to the Board of City Commissioners. However, under the new form of government, the Board no longer existed. On February 19, 1980, the mayor, pursuant to an opinion from the city attorney's office, issued an executive order delegating authority to hear zoning appeals to the newly-formed City Council.

The City Council accepted the mayor's delegation and, upon hearing the appeal, reversed the Planning Commission's decision and denied appellant's preliminary application for the 32–unit project. Appellant then filed an action for extraordinary relief in district court, arguing that the City Council was not properly authorized to hear the appeal. Appellant also argued that his project was entitled to a building permit under the zoning ordinance that had been in place at the time of his original application. On February 19, 1980, during the time his applications were pending, the City Council approved a new zoning ordinance which downzoned appellant's property from "R–6" to "R–2H."[3] At the time he filed his complaint for extraordinary relief, appellant also obtained an injunction preventing publication of the "R–2H" zoning ordinances. On March 3, 1980, he filed yet a third application with the HLC for an 18–unit project. This third project and a fourth alternative, a 24–unit project, were evaluated by the HLC on March 17, 1980. Appellant later abandoned them when the injunction was lifted and the "R–2H" zoning ordinance became effective.

■ We disagree with the trial court's analysis permitting the City Council to hear

---

review is a new step in the permit process which was added following the establishment of a historical district in the Avenues.

2. The revised plan was eventually reviewed by the HLC, which recommended disapproval for the same reasons applicable to the earlier proposal.

3. Although many differences exist between "R–6" and "R–2H," it is sufficient to note that under the "R–2H" classifications, appellant's applications were not viable.

appeals of Planning Commission decisions. The Optional Forms of Municipal Government Act, as analyzed in *Martindale v. Anderson,* 581 P.2d 1022 (Utah 1978), prohibits the City Council from hearing such appeals because of the separation of powers doctrine. Utah Code Ann. § 10–3–1209 (1986) defines the council-mayor form of government:

> The optional form of government known as council-mayor form vests the government of a municipality which adopts the form in two separate, independent, and equal branches of municipal government.

In *Martindale,* we analyzed this statute and held that the approval of subdivision plots by the mayor of a city under the council-mayor form of government constituted an exercise of executive, not legislative, power.

> [W]e are compelled to conclude that [the statute] in fact provides for the absolute separation of executive and legislative powers. A fortiori, the 1977 modifications of the Act specifically vest the whole of the executive powers in the Mayor and only the legislative powers in the Council, and we consequently hold that the council-mayor form of government as adopted by Logan City is a true separation of powers form of government.

*Id.* at 1027.

As in *Martindale,* we hold that the authority to resolve zoning disputes is properly an executive function rather than a legislative one. Concomitantly, the passage of general zoning ordinances and the determination of zoning policy is properly vested in the legislative branch. "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty to make such enforcement. The latter are executive func-

tions." *Id.* Thus, a city council under the council-mayor form of government may not hear appeals from zoning decisions of a planning commission.

In the interest of clarification, we will determine the proper body to hear zoning appeals from planning commission under the council-mayor form of government. In *Chambers v. Smithfield City,* 714 P.2d 1133 (Utah 1986), we addressed an analogous question, i.e., the procedure for granting zoning variances. Under Smithfield City ordinances, a variance request went first to the Board of Adjustment and the Planning Commission for a recommendation. The recommendations were then submitted to the Smithfield City Council, which made the final decision concerning the variance. We analyzed this procedure and held:

> This procedure does not comport with the provisions of the enabling act. U.C.A., 1953, §§ 10–9–1 to –18 (1973 ed. and Supp.1985). That Act provides that the legislative body of a city (in this case the city council) has the right to regulate zoning. § 10–9–1. However, in order to exercise that power, the legislative body *shall* provide for the appointment of a Board of Adjustment. § 10–9–6. *The Board is to be an appellate body for any person aggrieved by a zoning decision.* § 10–9–9. Section 10–9–12 sets forth the powers of the Board.

*Id.* at 1136 (emphasis added). We have thus previously construed the act which grants zoning power to cities and towns as delegating the authority to hear appeals of any zoning decision to the city board of adjustment.[4] We therefore hold that the board of adjustment is the proper body to hear zoning appeals from the planning commission under the council-mayor form of government.[5]

---

**4.** At first glance, *Thurston v. Cache County,* 626 P.2d 440 (Utah 1981), appears to be contrary precedent. In *Thurston,* we held that the county commission did not have to vest power in the board of adjustment, nor did it have to surrender the power of review. *Id.* at 445–46. However, in *Chambers,* we explained that "the statutory provisions regarding county boards of adjustment are entirely different from those con-

cerning city boards of adjustment." *Chambers,* 714 P.2d at 1137. Therefore, *Thurston* is inapplicable.

**5.** We disagree with the conclusion in Associate Chief Justice Howe's concurring and dissenting opinion that Utah Code Ann. §§ 10–9–4 & 10–9–6 to –9 (1986) suggest that appeals from planning commissions are taken to the city council.

■ The second issue to be addressed is whether appellant had a vested right in the "R–6" zoning of his property at the time of his application for conceptual approval on October 24, 1979. On February 19, 1980, the mayor issued an order granting GACC's request and authorizing the City Council to hear zoning appeals. On the same day that the appeal was granted, the City Council approved the ordinance which downzoned appellant's property. Although appellant's injunction initially prevented the publication of the new ordinance, the injunction was eventually lifted. Appellant argues that because his application was on appeal at the time of the change, he is entitled to a building permit under the original "R–6" zoning.

The question of when rights to a building permit vest under a zoning ordinance is not a novel one. In *Western Land Equities, Inc. v. City of Logan,* 617 P.2d 388 (Utah 1980), the plaintiffs submitted a preliminary plan to the Logan City Planning Commission in much the same manner as did appellant in this case. The Planning Commission discussed the subdivision project several times over four months and eventually denied permission. The plaintiffs appealed the unsatisfactory decision to the Municipal Council and, after another unfavorable decision, filed a complaint in district court. After the complaint was filed but before it was resolved, an ordinance was passed which changed the zoning in the plaintiffs' area and would have prohibited the plaintiffs' project. The plaintiffs sought a determination, as a matter of law, that they had a vested right to develop a subdivision under the earlier zoning ordinance. We held

that an applicant for subdivision approval or a building permit is entitled to favorable action if the application conforms to the zoning ordinance in effect at the time of the application, unless changes in the zoning ordinances are pending which would prohibit the use applied for, or unless the municipality can show a compelling reason for exercising its police power retroactively to the date of the application.

*Id.* at 391. Accordingly, we must determine, first, whether appellant's application conformed to the zoning ordinance in effect at the time it was filed, and second, whether the proposed zoning changes were pending at the time he made his application. *Id.* at 396.

The trial court found, after a review of the schematic conceptual drawings for the various projects and revisions submitted by appellant, that (1) there were violations of "R–6" zoning ordinances regarding sideyards and rearyards, (2) there was an unresolved ownership conflict regarding a right-of-way, (3) there was an undisclosed lack of ownership of one parcel, (4) variances from the Board of Adjustment needed to be obtained before zoning approval of the projects could be granted due to problems with setoffs, sideyards, and other violations, and (5) a complete zoning review was not possible due to the preliminary nature of the drawings. The court found specifically that "[t]he drawings for each project were otherwise too preliminary and incomplete for full zoning review, and ... such drawings could not be used to support zoning approval which is a prerequisite to the issuance of a building permit." In fact, the trial court found that appellant never filed an application with the City Building Department for a building permit. Under Utah Rule of Civil Procedure 52(a), we will

Utah Code Ann. § 10–9–4 (1986) states that the planning commission advises the city council on "a zoning plan." We read this to mean that the planning commission is an advisory body to the council concerning a municipality's zoning scheme, not concerning individual zoning disputes. Utah Code Ann. §§ 10–9–6 to –9 (1986 & Supp.1987) do not, as Justice Howe correctly notes, provide specifically for appeals from the planning commission to go to the board of adjustment. They do, however, provide for the board to hear appeals from "the zoning adminis-

trator," who is appointed to decide "routine and uncontested matters of the board...." Utah Code Ann. § 10–9–8 (1986). On appeal, the board has the power to grant variances from zoning ordinances if special conditions result in unnecessary hardship. Utah Code Ann. § 10–9–12 (1986). Although not dispositive, these sections taken together lead us to believe that directing appeals from planning commission decisions to the board is within the spirit of the board's statutory functions.

overturn the factual findings of a trial court only if they are clearly erroneous. We find no indication of such error here and therefore rely upon these findings. Appellant has thus failed to fulfill the first requirement of the *Western Land Equities* test because his application did not comply with the "R–6" zoning ordinance requirements then in effect. His application therefore cannot serve to vest any rights to a particular zoning classification.

In addition, the trial court found that the zoning change was pending prior to appellant's application and that appellant and his architect were aware of the pending change. Allowing persons to obtain vested rights under a zoning ordinance merely by filing preliminary and incomplete papers would defeat the very purpose of zoning regulations. Because appellant fails both parts of the *Western Land Equities* test, he has no vested right to build under the "R–6" zoning classification; the city has no duty to demonstrate a prevailing public interest as required in *Western Land Equities.*

Appellant also challenged GACC's standing as a party to a zoning appeal. This issue is moot in light of our holdings herein. We affirm the trial court's ruling that appellant did not have a vested right under the "R–6" zoning classification. We reverse the determination that the city council is the proper body to hear appeals from planning commission decisions. Those appeals must properly go to the board of adjustment.

Notwithstanding our ruling regarding the appeals process in zoning matters, we affirm the trial court's denial of extraordinary relief to appellant. Appellant was not entitled to the mandated issuance of a building permit, the relief he sought in his complaint. He had no vested interest in such a permit or in any zoning classification and must now comply with all current zoning restrictions and procedural steps necessary to develop his property.

STEWART, J., and RICHARD C. DAVIDSON, Court of Appeals Judge, concur.

HOWE, Associate Chief Justice, concurring and dissenting:

I concur in affirming the judgment, but dissent from the holding that an appeal from the Planning Commission is not taken to the Council but to the Board of Adjustment. The Planning Commission is an advisory body to the Council, Utah Code Ann. § 10–9–4 (1986), and hence the latter reviews actions of the Planning Commission. The Board of Adjustment has no statutory authority to review decisions of the Planning Commission. §§ 10–9–6 through –9 (amended 1987). Indeed, one member of the Planning Commission sits on the Board of Adjustment, which would make any hearing of an appeal biased. § 10–9–7. Section 10–9–9 provides that the Board of Adjustment should hear appeals from "the administrative officer"—not the Planning Commission. See *Walton v. Tracy Loan & Trust Co.*, 97 Utah 249, 92 P.2d 724 (1939), and *Xanthos v. Board of Adjustment*, 685 P.2d 1032 (Utah 1984), for examples and explanations of the Board's powers.

HALL, C.J., concurs in the concurring and dissenting opinion of HOWE, Associate C.J.

ZIMMERMAN, J., having disqualified himself, does not participate herein, DAVIDSON, Court of Appeals Judge, sat.