**MATRIX FUNDING CORPORATION,**
Petitioner,

v.

**AUDITING DIVISION OF THE UTAH
STATE TAX COMMISSION,**
Respondent.

No. 930355–CA.

Court of Appeals of Utah.

Feb. 3, 1994.

Craig C. Mortensen, Midvale, for petitioner.

Jan Graham and Mark E. Wainwright, Salt Lake City, for respondent.

Before BENCH, BILLINGS and RUSSON, JJ.

## OPINION

BENCH, Judge:

Matrix Funding Corporation (Matrix) appeals an order from the Utah State Tax Commission (Commission) holding that a transaction between Matrix and one of its Utah customers (Customer) requires payment of sales tax. We affirm.

## FACTS

Matrix and Customer entered into a Sale and Leaseback Agreement (Sale Agreement), which provided that Matrix would purchase equipment from Customer with title passing to Matrix. Customer then agreed to lease the equipment back for a period of sixty

months, giving Customer an option to purchase the equipment at the end of the term, which is evidenced by a Master Lease Agreement (Lease Agreement). To exercise the option, Customer would have to pay Matrix nineteen percent of the amount Matrix paid Customer. If Customer did not exercise its option, Matrix would retain title and take possession of the equipment.

In May 1991, Matrix requested the Commission to issue an advisory opinion regarding the application of the Utah sales and use tax statutes and regulations to the transaction between Matrix and Customer. The Commission issued a letter to Matrix advising that the transaction constituted a taxable lease. Matrix petitioned the Commission for a formal hearing, which was held in September 1992. The Commission issued findings of fact, conclusions of law, and an order, concluding that the transaction was taxable under Utah Code Ann. § 59–12–103(1) (1992). Matrix filed a petition for review with this court.

## STANDARD OF REVIEW

■ Matrix challenges the Commission's conclusion that the transaction between Matrix and Customer was taxable under section 59–12–103(1). We review the Commission's conclusions for correctness under Utah Code Ann. § 59–1–610 (Supp.1993).[1] *See Board of Equalization v. State Tax Comm'n,* 864 P.2d 882, 884 (Utah 1993). Section 59–1–610 directs this court to "grant the [C]ommission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before [this] court." Since the statute at issue, section 59–12–103, does not explicitly grant discretion to the Commission, we review for correctness the Commission's conclusion that the transaction is taxable.

1. The Legislature recently codified the standard of review to be applied by appellate courts when reviewing formal adjudicative proceedings before the Commission. *See* Utah Code Ann. § 59–1–610 (Supp.1993). This section supersedes the Utah Administrative Procedures Act pertaining to judicial review of formal adjudicative proceed-

## ANALYSIS

### Sale

■ The dispositive issue on appeal is whether the Commission erred in concluding that Matrix's Sale Agreement with Customer was actually a sale. Matrix argues that this transaction was a loan, and not a sale, claiming there is one integrated transaction between it and Customer. We disagree. The Sale Agreement provided that Customer would sell the equipment to Matrix, while the Lease Agreement provided that Matrix would lease the equipment back to Customer. There are, therefore, two distinct transactions: (1) the sale; and (2) the leaseback.

■ Whether the transactions are taxable is a matter of statutory interpretation. Section 59–12–103(1) states: "There is levied a tax on the purchaser for the amount paid or charged for the following: (a) retail sales of tangible personal property made within the state." Utah Code Ann. § 59–12–103(1) (1992). Section 59–12–102(10) defines a "sale" for sales tax purposes as "*any transfer of title,* exchange, or barter, conditional or otherwise, in any manner, of tangible personal property or any other taxable item or service under Subsection 59–12–103(1), for a consideration." *Id.* § 59–12–102(10) (emphasis added).

■ When interpreting statutory language, we first examine the statute's plain language and resort to other methods of statutory interpretation only if the language is ambiguous. *State v. Vigil,* 842 P.2d 843, 845 (Utah 1992). Section 59–12–102(10) plainly and unambiguously defines a sale as "any transfer of title." The Sale Agreement provides: "The parties agree that title to the Equipment shall pass from [Customer] to [Matrix] on the Closing Date." Thus, according to the plain meaning of the statute and the language of the Sale Agreement, a sale occurred when Customer transferred title to the equipment to Matrix.[2] However,

ings. *49th Street Galleria v. State Tax Comm'n,* 860 P.2d 996, 999 (Utah App.1993).

2. Since the statute is unambiguous, we need not examine other methods of statutory construction to define or interpret a sale, as Matrix urges. Therefore, although there may be some indica-

the sale from Customer to Matrix is exempt from sales tax since the "property [was] purchased for resale in this state, in the regular course of business...." Utah Code Ann. § 59–12–104(27) (1992).

### Leaseback

■ The leaseback transaction from Matrix to Customer is, however, subject to sales tax regardless of whether it is a true lease or a lease intended as security. If the leaseback transaction is a true lease, it is clearly subject to sales tax under Utah Code Ann. § 59–12–103(1)(k), which levies a tax on "leases and rentals of tangible personal property."

■ If the leaseback transaction is a lease intended as security, it is subject to sales tax as a sale from Matrix to Customer under Utah Code Ann. § 59–12–102(10)(e) (1992). Section 59–12–102(10)(e) defines a sale as "any transaction under which right to possession, operation, or use of any article of tangible personal property is granted under a lease or contract and the transfer of possession would be taxable if an outright sale were made." *Id.* In the present case, Customer has the right to possession and use of the property during the term of the lease. Thus,

the lease intended as security would be treated as a sale of the equipment by Matrix to Customer, with Matrix retaining a security interest in the equipment. This leaseback transaction between Matrix and Customer therefore would constitute a sale under section 59–12–102(10)(e) and would be subject to Utah sales tax.

### CONCLUSION

Section 59–12–103(1) unambiguously defines sale as "any transfer of title." Since Customer transferred title to Matrix, this first transaction was a sale. The leaseback transaction from Matrix to Customer is taxable regardless of whether it is construed to be a true lease or a lease intended as security.

We therefore affirm the Commission's order.

BILLINGS and RUSSON, JJ., concur.

---

tion that the transaction between Customer and Matrix resembled certain aspects of a loan, we are governed by the plain language of the statute.