**SALT LAKE COUNTY COTTONWOOD SANITARY DISTRICT, a public entity, Plaintiff and Appellee,**

v.

**SANDY CITY, a municipal corporation of the State of Utah, Defendant and Appellant.**

No. 930294–CA.

Court of Appeals of Utah.

Aug. 1, 1994.

David L. Church, Clark R. Nielsen, and Stephen L. Henriod, Salt Lake City, for appellant.

Gerald H. Kinghorn, R.L. Knuth, and Bill Thomas Peters, Salt Lake City, for appellee.

Before DAVIS, JACKSON, and ORME, JJ.

## OPINION

DAVIS, Judge:

Sandy City appeals a final judgment ruling that the Sandy City Council (Council) had no authority to hear conditional use permit appeals. We affirm.

### FACTS

Appellee, Salt Lake County Cottonwood Sanitary District (Cottonwood), applied to the Sandy City Planning Commission (Commission) for a conditional use permit to construct an administrative site consisting of an office, vehicle garage, and a related parking facility at 8620 South Highland Drive. After a public hearing on the matter, the Commission, on May 16, 1991, approved Cottonwood's application based on the determination that Cottonwood's proposed facility was a "public service," thus qualifying as a conditional use within the existing R–1–8 residential zone. Sandy City Development Code § 15–7–5(c)(8).

Appellant, Sandy City, operates under the optional form of municipal government known as the council-mayor form, in which the mayor's office assumes the executive functions and the City Council assumes the legislative functions of municipal government. Utah Code Ann. § 10–3–1209 (1992). Pursuant to section 10–9–9 of the Utah Code, the Council had designated itself as the body to hear conditional use permit appeals. Sandy City Ordinance § 15–23–7.

Accordingly, Sandy City residents appealed the decision of the Commission to the Council, which, pursuant to a vote on July 30, 1991, reversed the Commission's grant of the conditional use permit. The Council then passed Resolution # 91–60 C, entered October 2, 1991, disapproving Cottonwood's application for a conditional use permit of the subject property.

Cottonwood sued Sandy City in district court for extraordinary relief pursuant to Rule 65B(a) & (e)(2)(A) of the Utah Rules of Civil Procedure, seeking an order reversing the Council's decision and reinstating the conditional use permit granted by the Commission.

On November 30, 1992, the district court entered its memorandum decision finding

that Sandy City, by appointing itself to hear conditional use permit appeals, violated section 10–3–1209. The court noted that Sandy City is organized pursuant to the council-mayor form of government, which separates municipal governmental functions according to whether they are legislative or executive. Thus, the court reasoned that the Council, a legislative body, had no authority to perform the executive function of hearing conditional use permit appeals. The district court reversed the Council's decision to refuse to issue the conditional use permit, and affirmed the Commission's issuance of the permit.

■ Sandy City appeals, claiming the district court erred in determining that the Council was without authority to hear the conditional use permit appeal.[1]

## ISSUE AND STANDARD OF REVIEW

■ The dispositive issue before us is whether the Council has the statutory authority to hear a conditional use permit appeal. Consideration of this issue involves the interpretation of several statutes. " '[W]e construe a statute according to its plain language.' " *Hatton–Ward v. Salt Lake City Corp.,* 828 P.2d 1071, 1072 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992); *accord Matrix Funding Corp. v. State Tax Comm'n,* 868 P.2d 832, 833 (Utah App.1994). Further, because statutory analysis is an issue of law, we independently review it, according no deference to the trial court. *State v. Shipler,* 869 P.2d 968, 969 (Utah App.1994) (citing *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990)).

1. Sandy City raises several other issues on appeal. However, because we affirm the trial court's ruling that Sandy City lacked the authority to hear conditional use permit appeals, we need not address those issues.

Regarding Sandy City's claim that the district court erred in resolving the dispute via a sua sponte legal determination, it should be noted that the district court heard the case pursuant to Utah Rule of Civil Procedure 65B(e). This rule, captioned as "Wrongful use of judicial authority or failure to comply with duty," provides that
(2) ... Appropriate relief may be granted:
(A) where an inferior court, administrative agency, or officer exercising judicial functions

## COUNCIL–MAYOR FORM OF GOVERNMENT

Sandy City argues that the trial court erred in ruling that the Council did not have the authority to hear conditional use permit appeals. Cottonwood responds that the trial court's ruling was correct because Sandy City is organized pursuant to the council-mayor form of government and, therefore, has two separate branches of government, legislative and executive, which must act independently and may not exercise powers bestowed upon the other.

In 1977, the Utah Legislature enacted legislation giving Utah municipalities the option of adopting one of two different types of governments. Section 10–3–101 of the Utah Municipal Code provides that "[e]ach municipality shall have a governing body which shall exercise the legislative and executive powers of the municipality unless the municipality is organized with separate executive and legislative branches of municipal government." Utah Code Ann. § 10–3–101 (1992).

When a municipality is organized with separate executive and legislative branches of government, it is known as the council-mayor form of government. The Utah Municipal Code defines the council-mayor form of government as follows:

The optional form of government known as the council-mayor form vests the government of a municipality which adopts this form in two separate, independent, and equal branches of municipal government; the executive branch consisting of a mayor and the administrative departments

has exceeded its jurisdiction or abused its discretion; ....
....
(4) ... Where the challenged proceedings are judicial in nature, the court's review shall not extend further than to determine whether the respondent has regularly pursued its authority. In short, the district court considered whether the Council had "regularly pursued its authority." The district court therefore properly reached the issue of the Council's authority to hear conditional use permit appeals.

and officers; and the legislative branch consisting of a municipal council.

*Id.* § 10–3–1209 (1992)[2].

The council-mayor form of government "is a true separation of powers form of government." *Martindale v. Anderson,* 581 P.2d 1022, 1027 (Utah 1978). Therefore, section 10–3–1209 "specifically vest[s] the whole of the executive powers in the Mayor and only the legislative powers in the Council." *Id. Martindale* expands on this principle:

> Simply stated, legislative powers are policy *making* powers, while executive powers are policy *execution* powers. Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty to make such enforcement. The latter are executive functions. They are the acts necessary to carry out legislative policies and purposes and are deemed acts of administration.

> The Act, by direct implication, confers policy-making functions upon the Council since it expressly empowers the Mayor to execute the policies adopted by the Council.... [T]hose policy-making powers only pertain to [the Council's] authority to prescribe by ordinance the general rules to be followed by the executive branch in exercising its powers of property management.

*Id.* (footnotes omitted).

■ The above analysis is helpful in determining whether the hearing of a conditional use permit appeal is an executive or legislative function. The hearing of conditional use permit appeals does not require a body "to prescribe by ordinance the general rules to be followed by the executive branch in exercising its powers of property management." *Id.* Nor does it involve policy-making. Instead, it involves policy execution, and "acts necessary to carry out ... policies and pur-

poses." *Id.* Because the hearing of such appeals involves the implementation of policy, we conclude that the hearing of conditional use permit appeals is an executive function and not a legislative function.[3]

Utah case law supports our conclusion that the hearing of a conditional use permit appeal is an executive function. In *Scherbel v. Salt Lake City Corp.,* 758 P.2d 897 (Utah 1988), the Utah Supreme Court considered section 10–3–1209 in conjunction with zoning disputes. The court held that, in a council-mayor municipality, "the authority to resolve zoning disputes is properly an executive function rather than a legislative one." *Id.* at 899. *Scherbel* reaffirmed the distinction drawn in *Martindale* between legislative and executive power, stating that the legislative branch of government may make laws, but may not perform the executive function of enforcing those laws. *Id.*

■ The decision in *Scherbel* is cited with approval in the more recent Utah Supreme Court case of *Sandy City v. Salt Lake County,* 827 P.2d 212 (Utah 1992). In *Sandy City,* the distinction between legislative and executive functions was reiterated. The court quoted the rule set forth in *Scherbel* that "'the passage of general zoning ordinances and the determination of zoning policy [are] properly vested in the legislative branch.'" *Id.* at 221 (citing *Scherbel,* 758 P.2d at 899). Moreover, the court explained that, as a legislative function cannot be properly delegated to an executive body, an executive function, such as enforcing a zoning decision, cannot be delegated to a legislative body. *Id.* at 221 & n. 5; *see also Martindale,* 581 P.2d at 1027 (Optional Form of Government Act of 1975[4] does not intend that executive powers of municipality be shared with legislative branch); *Davis County v. Clearfield City,* 756 P.2d 704, 708 (Utah App.), *cert. denied,* 765 P.2d 1278 (Utah 1988) (procedure which

---

**2.** Section 10–3–1209 is included within the "Optional Forms of Municipal Government Act." Utah Code Ann. §§ 10–3–1201 to –1228 (1992).

**3.** The Council has already performed the legislative function by its passage of Sandy City Ordi-

nance § 15–7–5, which the Commission was implementing.

**4.** Recodified covering the same subject matter in Utah Code Ann. §§ 10–3–1201 to –1228 (1992).

provides for conditional use permit appeals to be heard by city council is flawed).

## AMENDMENTS TO THE UTAH MUNICIPAL CODE

The confusion in this case arises because of the 1989 amendments to sections 10–9–8 and –9 of the Utah Municipal Code. The amendments added subsection (3) to section 10–9–8 of the Utah Code as follows:

> Appeals from decisions of the planning and zoning commission regarding conditional use permits shall be heard by the board of adjustment unless the legislative body of the municipality by ordinance has designated another body as the appellate body for those matters.

Section 10–9–9(2) was amended such that its language is identical to section 10–9–8(3).[5]

The amendments granted the legislative body the option to designate "another body as the appellate body" rather than rely solely on the board of adjustment to hear conditional use permit appeals. Sandy City claims that "another body" means an entity from either the executive or legislative branch (or perhaps an entirely different body). In contrast, Cottonwood claims that the phrase "another body" must be read in harmony with section 10–3–1209 and with *Scherbel* and, therefore, "another body" refers only to entities outside the legislative body.

In order to give meaning to the phrase "another body," we must read section 10–9–8 and –9 in conjunction with section 10–3–1209. "It is our duty to construe each act of the legislature so as to give it full force and effect. When a construction of an act will bring it into serious conflict with another act, our duty is to construe the acts to be in harmony and avoid conflicts." *Jerz v. Salt Lake County,* 822 P.2d 770, 773 (Utah 1991); *accord Roberts v. Erickson,* 851 P.2d 643, 644 (Utah 1993) (per curiam).

Sandy City's construction of sections 10–9–8 and –9, urging that "another body" means an entity from either the executive or legislative branch, would bring these sections into conflict with section 10–3–1209, which provides for separation between executive and legislative municipal functions. Accordingly, we hold that to construe these sections in harmony, the term "another body" is necessarily modified by section 10–3–1209 so that "another body" refers to an entity other than the legislative branch.[6] *Cf. Sandy City,* 827 P.2d at 221 (court refused to construe county ordinance in manner that would have granted quasi-judicial body legislative power; an "invalid delegation of power").

## CONCLUSION

We conclude that the hearing of a conditional use permit appeal is necessarily an executive function. Because the Sandy City Council is a legislative body and is organized pursuant to the council-mayor form of government, it is without authority to hear the appeal from the Sandy City Planning Commission's decision granting Cottonwood the conditional use permit. We therefore affirm the trial court's ruling that Sandy City Council violated section 10–3–1209 of the Utah Code by appointing itself as the body to hear conditional use permit appeals.

JACKSON, J., concurs.

ORME, J., concurs in result.

---

5. Language similar to the above two amending sections appears in the 1991 recodification and amendments to the Utah Municipal Code. *See* Utah Code Ann. §§ 10–9–407(2) & –704(2) (1992).

6. Sandy City points to the House Floor Debate, where various legislators apparently state their intention to overrule *Scherbel.* While that may have been their intention, the plain language of the statutes reveals the action of the legislature did not accomplish that result. *See Sandy City v. Salt Lake County,* 827 P.2d 212, 221 n. 5 (Utah 1992).